UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CORDELL COLLINS (#438583)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 12-715-SDD-SCR


**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.


ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.


Baton Rouge, Louisiana, February 11, 2014.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CORDELL COLLINS (#438583)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 12-715-SDD-SCR


**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Cordell Collins.

For the reasons which follow, the petition should be denied.

## I. State Court Procedural History

### A. Trial Court

Petitioner was found guilty of one count second degree murder in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana on March 29, 2008.  Petitioner was sentenced to a term of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.


### B. Direct Appeal

Petitioner appealed, asserting four grounds for relief:

(1)  the trial court erred in excluding testimony of an expert witness in the field of eyewitness memory;

(2)  the trial court erred in admitting the introduction

of other crimes evidence which the State failed to prove was committed by the defendant;

(3)   the trial court erred in allowing the State to introduce the uncorroborated written statement of Tremayne Franklin that was inconsistent with is testimony under oath; and,

(4)   the trial court erred in excluding the prior statements of Georgette Kimble to rebut the charge of recent fabrication.

Petitioner filed a *pro se* supplemental brief in which he asserted that there was insufficient evidence to support his second degree murder conviction.

The First Circuit Court of Appeal affirmed the petitioner's conviction and sentence. *State of Louisiana v. Cordell Collins*, 2009-0050 (La. App. 1st Cir. 8/12/09), 15 So.3d 385 (Table). Petitioner sought supervisory review by the Louisiana Supreme Court, which denied review on April 16, 2010. *State of Louisiana v. Cordell Collins*, 31 So.3d 1055, 2009-2004 (La. 4/16/10).

## C. Post-Conviction Relief

Petitioner signed an application for post-conviction relief ("PCRA") on January 11, 2011, and it was filed on February 12, 2011.[1] Petitioner asserted the following grounds for relief:

1.   the trial court erred when it informed the jury that the charge of second degree murder was brought by grand jury indictment when it was amended by the district attorney from first degree murder to second degree murder; and,

---

[1] State Court Record, Vol. 9, Loose Papers.

2.   he was denied effective assistance of counsel when
     trial counsel stipulated to the amendment to the
     indictment and agreed not to object to the
     admission of evidence on *Prieur* grounds.

Petitioner filed a supplemental PCRA in which he asserted two additional grounds for relief:

3.   the trial court erred when it denied his challenge
     pursuant to *Batson*; and,

4.   he was denied effective assistance of counsel on
     appeal when appellate counsel failed to brief a
     *Batson* violation.

Counsel subsequently enrolled on behalf of the petitioner and filed a supplemental brief in support of the PCRA.[2]  However, in its order denying the PCRA, the trial court also denied the motion for leave to supplement the PCRA to assert additional grounds for relief.[3]  The trial court denied the PCRA on May 15, 2012.[4]

Petitioner sought review by the Louisiana First Circuit Court of Appeal.  The Louisiana First Circuit Court of Appeal denied review.  *State ex rel. Cordell Collins v. State of Louisiana*, 2012-KW-1432 (La. App. 1st Cir. 11/5/12).

Petitioner sought review by the Louisiana Supreme Court, which denied review on May 3, 2013.  *State ex rel. Cordell Collins v. State of Louisiana*, 2012-2664 (La. 5/3/13), 113 So.3d 212.

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

3

**D. Federal Habeas Corpus Application**

Petitioner filed his federal habeas corpus application on November 14, 2012.

Petitioner asserted the following grounds for relief:

Ground One:     The trial court violated petitioner's constitutional right to have an expert testify at trial.

Ground Two:     The trial court violated petitioner's constitutional rights by allowing other crimes evidence from a crime which the State failed to prove was committed by petitioner.

Ground Three:   Petitioner's constitutional rights were violated when the trial court excluded prior statement of Georgette Kimble that was offered to rebut a charge of recent fabrication.

Ground Four:    Ineffective assistance of counsel.

On November 15, 2012, the petitioner filed a Motion to Stay in Abeyance of Petitioner's Federal Habeas Corpus Petition.[5]   On November 29, 2012, the petitioner's Motion to Stay in Abeyance of Petitioner's Federal Habeas Corpus Petition was denied and the petitioner was ordered to file a motion to dismiss all grounds for relief which have not been fully exhausted through the state courts.[6]

On December 12, 2012, the petitioner filed a Motion Dismissing All Grounds for Relief Which Have Not Been Fully Exhausted Through

---

[5] Record document number 5.

[6] Record document number 6.

4

State Courts seeking to dismiss his unexhausted grounds for relief, i.e., Ground Four, ineffective assistance of counsel.[7] On December 13, 2012, the petitioner's motion was granted, dismissing his ineffective assistance of counsel claim.[8]

## II. Applicable Law and Analysis

### A. Standard of Review

Section 2254(d) provides  as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) provides as follows:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Subsection (d)(2) of § 2254 applies to a state court's factual determination.  It bars federal court relief unless the state court

---

[7] Record document number 8.

[8] Record document number 9.

5

adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence." Subsection (d)(1) provides the standard of review for questions of law and mixed questions of law and fact. *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997).

The second clause of subsection (d)(1) refers to mixed questions of law and fact because it speaks of an "unreasonable application of ... clearly established Federal law." When the issue before the court is a mixed question of law and fact, the court may grant relief only if it determines that the state court decision rested on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court," to the facts of the case. The first clause of subsection (d)(1) refers to questions of law. When the issue raised involves a purely legal question, the court may grant relief only if it determines that a state court's decision rested on a legal determination that was "contrary to...clearly established Federal law, as determined by the Supreme Court." *Id.*

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, ____ U.S. ____, ____, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011). Review under § 2254(d)(1) focuses on what a state

6

court knew and did. *Cullen v. Pinholster*, 131 S.Ct. at 1399. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review.  If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court." *Id.*, at 1400.  State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166 (2003). *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d). *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).[9]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor*, 529 U.S. 362, 405, 406, 120 S.Ct. 1495, 1519 (2000). If the state court decision "identifies the correct

---

[9] The Fifth Circuit Court of Appeals has held that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law. *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id.*, at 413, 120 S.Ct. at 1523.

### Ground One: Exclusion of Expert Witness

In Ground One, the petitioner argued that the trial court erred in excluding the testimony of an expert witness in the field of eyewitness identification.

A federal habeas court may grant relief when the petitioner is held in custody pursuant to a judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986).

Insofar as the foundation of the petitioner's habeas application rests on the proper interpretation and application of state jurisprudence and rules of evidence, this is an issue not within the scope of federal habeas corpus.

A state court's evidentiary rulings justify granting habeas corpus relief only if they violate a specific constitutional right or render the trial fundamentally unfair. *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). Even if an evidentiary ruling is found to be a constitutional violation, the applicant must show

8

actual prejudice; i.e., that the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993)(internal quotation marks and citation omitted).   In determining whether an erroneous evidentiary ruling had a substantial and injurious effect on the jury verdict, the court must consider the following: (1) the importance of the witness's testimony; (2) whether the testimony was cumulative; (3) whether there was evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case.  *Cupit v. Whitley*, 28 F.3d 532, 539 (5th Cir. 1994).

At trial, the defense called Dr. John C. Brigham, an expert on eyewitness memory.[10]  The State objected, arguing that jurisprudence excluded the type of testimony the defense sought to present.[11]  The defense argued that expert testimony on eyewitness identification was recognized as scientifically valid and would aid the trier of fact.[12]  The defense proffered the testimony of Dr. Brigham.[13]

Dr. Brigham indicated that he would testify about research findings on the factors that affect the accuracy of eyewitness

---

[10] State Court Record, Vol. 7, pp. 1260-1268.

[11] *Id*. at 1260-1261.

[12] *Id*. at 1263-1264.

[13] *Id*. at 1265.

9

memory.[14]  On cross-examination, Dr. Brigham indicated that he was prepared to testify about research findings concerning the most effective way of getting accurate responses from a photographic line-up and to present studies about memory and perception.[15]  Dr. Brigham conceded that he did not bring the studies he relied upon with him for examination.[16]

The trial court sustained the State's objection, ruling that the probative value of the testimony did not outweigh its prejudicial impact.[17]

The Louisiana First Circuit Court of Appeal ruled that the exclusion of Dr. Brigham's testimony was not an abuse of discretion.  The Louisiana First Circuit Court of Appeal made the following factual finding:

> There was evidence before the jury from which it could determine the facts based on common knowledge, education, and experience.  Thus, Dr. Brigham's opinion evidence concerning the fallibility of human perception and memory in general was unnecessary in order for the jury to resolve the identity issue ... Further, the ruling did not prevent the defendant from confronting and cross-examining Pope to present his defense; it merely prevented the defendant from using Dr. Brigham to elevate the probative value of research findings made under conditions dissimilar to those present in the instant case.  The ruling specifically reserved to the defendant the right to attack the reliability of Pope's

---

[14] Transcript of Proffered Testimony, *id.* at 1191.

[15] *Id.* at 1192.

[16] *Id.* at 1201.

[17] *Id.* at 1240-1242.

identification of the defendant.  Thereafter, the defense
questioned the reliability of Pope's identification of
the defendant as his assailant on the basis of lighting
conditions present before and after Pope and the victim
were approached by their assailants, on the basis of
Pope's head being down during his encounter with the
assailants, and on the basis of corruption of
identification due to exposure to the defendant while
being incarcerated with him.  The defense also presented
testimony ... challenging the reliability of Pope's
identification of the defendant in the line-up presented
to him in the hospital after he had been administered
morphine on the basis that morphine made long-term memory
less reliable.  After a careful examination of the facts
in this case, the evidence presented, the trial court's
oral reasons, as well as the proffer of the testimony of
Dr. Brigham, we conclude that even if the exclusion of
the testimony of Dr. Brigham was an error, the error was
harmless and the verdict actually rendered in this case
"was surely unattributable to the error."

*Collins*, at 6-7 (case citations omitted).

The Louisiana First Circuit Court of Appeal found the
exclusion of Dr. Bingham's testimony harmless.  In light of the
evidence presented in the state court proceeding, that decision is
neither contrary to, nor an unreasonable application of, federal
law.

Even assuming that the testimony of Dr. Brigham was at least
somewhat important and that his testimony was not cumulative, "the
strength of the prosecution's case is probably the single most
important factor in determining whether the error was harmless."
*Cupit*, 28 F.3d at 539.

Here, the prosecution's case was very strong.[18]

---

[18] What follows is a summary of the most relevant evidence
(continued...)

11

Travis Pope testified that Jamon Leroy George, the victim, was his nephew.[19]   Pope testified that on January 3, 2004, at approximately 7:30 to 8:00 p.m., he was visiting his sister and the victim at his sister's apartment in the Sherwood Forest area of Baton Rouge.[20]   Pope testified that as he prepared to leave the apartment, the victim walked with him to his car.[21]

Pope testified that he opened his car door at which time he and the victim were approached by two men.[22]   Pope testified that he recognized one of the two men and identified the defendant as the person he recognized.[23]   Pope testified that the two men approached him and his nephew, both men drew guns and made him and his nephew lay down with their heads on the ground.[24]   Pope testified that the two assailants searched his car and then placed

---

[18](...continued)
supporting the verdict.   However, all of the evidence has been considered.   Defense counsel's cross examination of key witnesses challenged the accuracy of their recollection of the events, brought out inconsistencies between their testimony at trial and earlier testimony, and questioned the witnesses about inconsistencies between their trial testimony and written records.

[19] State Court Record, Vol. 6, p. 1111.

[20] *Id.* at 1112.

[21] *Id.* at 1113.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 1114.

him in the back seat and placed his nephew in the trunk.[25]  Pope testified that the defendant told the other assailant to kill him if he moved.[26]

Pope testified that the assailants drove to another location where they removed the speakers from the trunk of his car and placed him in the trunk with his nephew.[27]  Pope testified that the assailants drove to an area behind the mall, opened the trunk and began pulling him out of the trunk.[28]  Pope testified that his leg got caught and he fell to the ground.[29]  Pope testified that before he hit the ground he heard gunshots.[30]  Pope testified that he pulled himself under the car to protect himself.[31]  Pope testified that the two assailants stood over him and shot him.[32]  Pope testified that he was shot seven times, four times in the stomach, two times in the chest and one time in the arm.[33]  Pope testified

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 1115.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at 1116.

[33] *Id.*

that he did not actually see the petitioner shoot him.[34]   Pope testified that as people came out, the two assailants got in the car and drove away.[35]

Pope testified that he was hospitalized for three months and underwent six or seven surgeries.[36]   Pope testified that for a period of time he had a trachea and was unable to speak.[37]   Pope testified that before a photographic lineup was conducted he provided the police with the description of the assailants using a pen and pad.[38]

Pope testified that in February he was shown several photographic lineups.[39]   Pope testified that he picked the petitioner from the photographic lineup;[40] he was 100 per cent certain.[41]   Pope testified that he did not know the petitioner's name but had been in jail with him for three weeks.[42]

Baton Rouge Police officer Garrett Sylvan testified that on

---

[34] *Id.* at 1125.

[35] *Id.* at 1117.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 1122.

[39] *Id.* at 1119.

[40] *Id.* at 1122–1124.

[41] *Id.* at 1124.

[42] *Id.* at 1122.

January 3, 2004, he was sitting in the rear parking lot of the Second District located on Highland Road, when he heard several gunshots fired.[43]  Officer Sylvan exited his vehicle, entered the street, and observed two black males running from the shooting scene at 212 Harding Street.[44]  Officer Sylvan testified that one male was wearing a black sweat and the other was wearing a white sweat.[45]  Officer Sylvan testified that he chased the subject wearing the white sweat down West Buchanan behind a building on Taylor Street.[46]  Officer Sylvan testified that he apprehended the petitioner standing in the doorway of a residence on Taylor Street.[47]

The State also presented evidence concerning an earlier shooting.  On December 26, 2003, Tremayne Franklin was shot in front of his aunt's house at 212 East Harding Street.  Franklin testified that the petitioner is his cousin but denied having any knowledge of the petitioner being in the area of the shooting or asking for money prior to the shooting.[48]  However, Franklin did identify State Exhibit #76 as a document, in his handwriting and

---

[43] *Id*. at 1030.

[44] *Id*. at 1031.

[45] *Id*.

[46] *Id*.

[47] *Id*. at 1032.

[48] *Id*. at 983.

bearing his signature, dated January 1, 2004.[49]  In the document,
Franklin indicated that the petitioner began asking him and his
friends for money and he told the petitioner, "I don't have nothing
for you."[50]  In the document, Franklin indicated that he and Cornell
Cummings drove to 212 East Harding Street.[51]  In the document,
Franklin stated that when he and Cummings were getting out of the
vehicle, the petitioner pulled up in another vehicle, jumped out
and approached them.[52]  In the document, Franklin stated that the
petitioner stood on the steps of his aunt's house and argued with
Cummings for approximately two minutes and then pulled out a gun
and shot Cummings.[53]  In the document, Franklin stated that he
turned to run and the petitioner also shot him,[54] then he fell to
the ground and crawled under a car, and the petitioner pulled him
out from under the car and shot him again.[55]  Franklin testified
that the police pressured him to implicate the petitioner in the

---

[49] *Id.* at 980-981.

[50] *Id.* at 982.

[51] *Id.* at 983.

[52] *Id.* at 984.

[53] *Id.* at 984-985.

[54] *Id.* at 985.

[55] *Id.* at 985-986.

shooting.[56]

Baton Rouge Police Officer Michael Gauthier testified that on December 26, 2003, he responded to 212 East Harding in response to a call on the radio for shots fired.[57]  Officer Gauthier collected two shell casings near the roadway for evidence.[58]

Baton Rouge Police Officer Clarence McGarner testified that he interviewed Tremayne Franklin regarding the December 26, 2003 shooting on East Harding Street.[59]  Officer McGarner testified that Franklin told him his cousin Cordell Collins shot him.[60]  Officer McGarner testified that he returned to the East Harding address and retrieved two shell casings from Franklin's aunt.[61]

Patrick A. Lane testified that he works at the Physical Evidence Unit of the Louisiana State Police.[62]  Lane testified that examination of the casings recovered from near the victim's body and from 212 East Harding Street indicated that the casings came

---

[56] *Id.* at 993.

[57] *Id.* at 997.

[58] *Id.*

[59] *Id.* at 1002.

[60] *Id.* at 1003.

[61] *Id.* at 1005.

[62] *Id.* at 1165.

from the same .45 caliber pistol.[63]

The State presented a strong case against the petitioner. Given the strength of the State's case, the petitioner has not shown that the exclusion of Dr. Bingham's testimony had a substantial and injurious effect on the jury's verdict. *Cupit*, 28 F.3d at 539-42. Petitioner's exclusion of expert testimony claim is without merit.

**Ground Two: Other Crimes Evidence**

In Ground Two, the petitioner argued that other crimes evidence was improperly admitted by the trial court. Specifically, the petitioner argued that the trial court erred in admitting into evidence shell casings unrelated to the murder for which he was being tried, in contravention of LSA-C.E. art. 404B.

A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, ____ U.S. ____, ____, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102 (1990); *West v. Johnson*, 92 F.3d 1385, 1404 (5th

---

[63] *Id*. at 1172-1174.

18

Cir. 1996), *cert. denied*, 520 U.S. 1242, 117 S.Ct. 1847 (1997). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Estelle*, 502 U.S. at 67-68, 112 S.Ct. at 479-480; *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).

States are free to implement procedures regarding the admission and/or exclusion of evidence, provided those procedures do not infringe on a constitutional guarantee. *Burgett v. Texas*, 389 U.S. 109, 113-14, 88 S.Ct. 258, 261 (1967); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

Petitioner's claim that the trial court erred in admitting into evidence shell casings unrelated to the murder may support federal habeas corpus relief *only* if the state court evidentiary ruling violates due process in such a way as to render the petitioner's criminal proceedings fundamentally unfair. *Lisenba v. People of Sate of California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289 (1941).

Federal habeas review of the admission of evidence is limited to whether the state court's evidentiary ruling was sufficiently egregious to render the trial fundamentally unfair or to violate an explicit constitutional right. *Peters v. Whitley*, 942 F.2d 937 (5th Cir. 1991); *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir.

1989).  The challenged evidence must be "a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir.), *cert. denied*, 484 U.S. 842, 108 S.Ct. 132 (1987); *accord Gonzales v. Thaler*, 643 F.3d at 430; *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Petitioner was charged in an amended indictment with one count of second degree murder of Jamon Leroy George.  The State introduced evidence regarding a prior criminal offense against Tremayne Franklin and the shell casings recovered from the scene of that offense.  Petitioner argued that the State failed to meet its burden of proving that he was the person who committed the offense against Franklin.  Alternatively the petitioner argued that the other crimes evidence was so prejudicial that it rendered his trial fundamentally unfair.

The First Circuit Court of Appeal made the following factual findings regarding the testimony:

> The trial court did not err in granting the State's *Prieur* motion.  The State made a showing of sufficient evidence to support a finding by the jury that the defendant committed the December 26, 2003 shooting.  The trial court also correctly found that the prejudicial effect to the defendant from the evidence of the prior shooting did not rise to the level of undue prejudice when balanced against the probative value of the evidence.  The defendant disputed his identity as the assailant in both the December 26, 2003 shooting and the instant offense.  Thus, the State had to establish that element at trial.  The evidence of the earlier shooting was highly probative on the issue of the defendant's identity as the assailant in the instant offense.

*Collins*, at 22.

Petitioner has not carried his burden to rebut the presumption of the correctness of appellate court's factual findings by clear and convincing evidence, as he is required to do by section 2254(e)(1).

**Ground Three: Exclusion of Kimble's Written Statement**

In Ground Three, the petitioner argued that the trial court erred in excluding the prior statements of Georgette Kimble, offered to rebut the charge of recent fabrication, which was in violation of LSA-C.E. art 801(D)(1)(a).  Specifically, the petitioner argued that the trial court erred when it denied the defense motion to introduce the transcript of Kimble's statement to the police on January 4, 2004 because the statement was admissible under LSA-C.E. art. 801(D)(1)(a).

As explained above in the analysis of Ground One, a federal habeas court may grant relief when the petitioner is held in custody pursuant to a judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C.  § 2254(a).  Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.  *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986).

Insofar as the foundation of the petitioner's habeas application rests on the proper interpretation and application of state jurisprudence and rules of evidence, this is an issue not

21

within the scope of federal habeas corpus.

Second, the state appellate court refused to review the petitioner's contention that the trial court erred, and violated LSA-C.E. art. 801, in denying his motion to introduce the transcript of Kimble's statement to police.  The appellate court did so because the record did not reflect that the petitioner made a contemporaneous objection to the trial court's ruling.  *State of Louisiana v. Cordell Collins*, 2009-0050 (La. App. 1st Cir. 8/12/09) at p. 25;  *see* La.C.Crim.P. art. 841.[64]

When a state court decision to deny relief rests on a state law ground that is independent of the federal questions raised by the petitioner and is adequate to support the judgment, the federal courts lack jurisdiction to review the merits of the petitioner's federal claims.  *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553 (1991); *Moore v. Roberts*, 83 F.3d 699, *reh. denied*, 95 F.3d 56 (5th Cir. 1996).  The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the

---

[64] La.C.Cr.P. art. 841 generally provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence." *See also State v. Arvie*, 505 So.2d 44, 47 (La. 1987) ("One purpose of the contemporaneous objection rule is to require counsel to call an error to the judge's attention at a time when the judge may correct the error.  The rule also prevents defense counsel from 'sitting on' an error and gambling unsuccessfully on the verdict, and later resorting to appeal on an error which might have been corrected at trial.")

prisoner ha[s] failed to meet a state procedural requirement."
*Coleman*, at 729-730, 111 S.Ct. at 2554.

> In the absence of the independent and adequate state
> ground doctrine in federal habeas, habeas petitioners
> would be able to avoid the exhaustion requirement by
> defaulting their federal claims in state court. The
> independent and adequate state ground doctrine ensures
> that the States' interest in correcting their own
> mistakes is respected in all federal habeas cases.

*Id*., at 731-32, 111 S.Ct. at 2554-55 (quoting *Rose v. Lundy*, 455
U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982)); *Moore*, at 703.

For the independent and adequate state ground doctrine to
apply, the state courts adjudicating a habeas petitioner's claim
must explicitly rely on a state procedural rule to dismiss the
petitioner's claims. *Moore*, at 702; *Sones v. Hargett*, 61 F.3d 410,
416 (5th Cir. 1995). The procedural default doctrine presumes that
the "state court's [express] reliance on a procedural bar functions
as an independent and adequate ground in support of the judgment."
*Id*. Petitioner can rebut this presumption by establishing that the
procedural rule is not "strictly or regularly followed." *Id*. Even
if the state procedural rule is strictly and regularly followed,
the petitioner can still prevail by demonstrating "cause for the
default and actual prejudice as a result of the alleged violation
of federal law, or demonstrate that failure to consider the claims
will result in a fundamental miscarriage of justice." *Coleman*, 501
U.S. at 750, 111 S.Ct. at 2565; *Moore*, at 702.

It is well-settled that the contemporaneous objection rule is

23

an independent and adequate state procedural ground. *Duncan v. Cain*, 278 F.3d 537 (5th Cir. 2002).  Petitioner did not even attempt to establish that the procedural rule of Articles 801 and 841 has not been "strictly or regularly followed," *Sones*, at 416, by the Louisiana state courts.  Nor did the petitioner present any argument that he has overcome the procedural bar by demonstrating the necessary cause and prejudice.[65]

In his Traverse to the State's Opposition to Pending Writ of Habeas Corpus the petitioner asserted that he received an affidavit from Marlon Washington, who was convicted as an accessory after the fact.  Petitioner further asserted that this "affidavit states that Jonathan Booth a/k/a Frog was one of the actual perpetrators of the murder of Mr. Leroy George."[66]  Broadly reading his Traverse, the petitioner asserted that he is actually innocent of the crime of conviction: "This affidavit goes to the innocence of petitioner which has been maintained all along."

To open the gateway to federal habeas review a petitioner

---

[65] The "cause" standard requires the petitioner to show that "some objective factor external to the defense" prevented him from timely raising the claims he now advances. *Murray v. Carriere*, 447 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986).  Objective factors that constitute cause include interference by officials that make compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense.  *Id*.

In addition to establishing cause for his procedural default, the petitioner must also show actual prejudice to overcome it.

[66] Record document number 18, p. 3.

asserting his actual innocence of the substantive offense must: (1) present "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"; (2) "that was not presented at trial"; and (3) must show, that in light of this new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537, 126 S.Ct. 2064, 2077 (2006) *citing Schlup v. Delo*, 513 U.S. 298, 299, 324-29, 115 S.Ct. 851, 854, 865-868 (1995).

The *Schlup* standard "is demanding and permits review only in the 'extraordinary' case." *House, supra,* at 538, 126 S.Ct. at 2077.  In applying the *Schlup* standard, the Fifth Circuit has held that: (1) the petitioner "bears the burden of establishing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence"; (2) "there is no presumption of innocence at a habeas proceeding" and the petitioner "comes before the habeas court with a strong - and in the vast majority of the cases conclusive - presumption of guilt"; and, (3) the *Schlup* standard "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005).

The 10 volumes of state court records have been carefully reviewed.  The Washington affidavit in not in the state court

25

record.   Petitioner also filed more than 280 pages of state court records with his § 2254 petition.   The Washington affidavit is not included.   Nor does any state court record refer to the Washington affidavit, or even to any claim by the petitioner that Booth murdered Leroy George and that the petitioner is actually innocent of the murder.   Therefore, there is insufficient evidence to meet the *Schlup* standard for establishing actual innocence as a gateway to federal court review of the petitioner's procedurally defaulted claim.

Nevertheless, assuming for the purpose of this report that the petitioner has overcome the procedural default of his claim that the trial court erred in excluding the prior statement of Georgette Kimble, the claim has no merit.

Kimble testified that on January 4, 2004, she lived near the Red Flower Chinese Restaurant.[67]  Kimble testified that in the early morning hours of January 4, 2004, she observed an automobile get "blown up" and catch fire.[68]  Kimble testified that she observed two dark-skinned black men, one 5'9" and the other 6' tall, running from the vehicle.[69]  Kimble testified that she "somewhat" saw the

---

[67] State Court Record, Vol. 7, p. 1407.

[68] *Id.*

[69] *Id.*

faces of the two men.[70]  Kimble testified that the petitioner was not one of the two men she saw running from the burning vehicle.[71] Kimble testified that she was "positive" that the two men were 5'9" and 6' tall and not 5'1" tall.[72]  Kimble testified that the two men were athletically built like basketball players.[73]  Kimble denied knowing the petitioner.[74]

On cross-examine, Kimble testified that she told the police that one of the two men was shorter than the other and that she specifically described their height as being 5'9" and 6' tall.[75] Kimble testified that during her recorded statement to police she provided a description of the two men including their height and complexion.[76]

On re-direct, Kimble was provided a transcript of the recorded statement she made to the police to refresh her memory.[77]  After reviewing the transcript of her statement Kimble testified that her trial testimony was consistent with the statement she gave police

---

[70] *Id.* at 1408.

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.* at 1409.

[75] *Id.* at 1410; 1411.

[76] *Id.* at 1411.

[77] *Id.* at 1413.

on January 4, 2004, in which she provided the police with a specific description, including height and complexion, of the two men running from the burning vehicle.[78]

As previously explained in the analysis of Ground One, a federal court's consideration of a state court's evidentiary ruling, as a basis for granting habeas corpus relief, is narrow. A state court's evidentiary ruling justifies granting habeas corpus relief only if it violates a specific constitutional right or renders the trial fundamentally unfair. *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). Even if an evidentiary ruling is found to be a constitutional violation, the applicant must show actual prejudice; i.e., that the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993)(internal quotation marks and citation omitted). In determining whether an erroneous evidentiary ruling had a substantial and injurious effect on the jury verdict, the court must consider the following: (1) the importance of the witness's testimony; (2) whether the testimony was cumulative; (3) whether there was evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case. *Cupit v. Whitley*, 28 F.3d 532, 539 (5th Cir. 1994).

As set forth in the analysis of Ground One, the State

---

[78] *Id.*

presented a strong case against the petitioner.  Given the strength of the State's case, the petitioner has not shown that the exclusion of the transcript of Kimble's recorded statement to police on January 4, 2004 had a substantial and injurious effect on the jury's verdict.  *Cupit*, 28 F.3d at 539-42.  Petitioner's claim regarding the exclusion of Kimble's January 4, 2004 statement is without merit.

### RECOMMENDATION

It is the recommendation of the magistrate judge that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Cordell Collins be denied.

It is further recommended that a certificate of appealability be denied for the reasons set forth herein.

Baton Rouge, Louisiana, February 11, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE